Good morning, Your Honors. Mitch Tilner for Appellant State Farm. I'd like to reserve five minutes for rebuttal, please. Also, this morning I filed a brand new opinion from the California Court of Appeal called UHRICH, U-H-R-I-C-H, versus State Farm. It was filed by the court two days ago. I have served and filed it for the court to consider. It's a case very similar to ours, and I will comment on it as I go along. State Farm raises three arguments on appeal. If the court agrees with any one of our three arguments, then the court should reverse the judgment. The first point is that State Farm had no duty to defend Mr. Abruzzo. This is an issue of law, and the question is, did the facts known to State Farm at the time it denied the defense leave open a potential for coverage? The policy covered bodily injury caused by accident. The facts known to State Farm when it denied the defense established that the plaintiff's injuries did not result from an accident. They resulted from a deliberate act of someone. The complaint alleged that the four boys conspired to throw concrete into the traffic, and that they did, pursuant to that conspiracy, throw concrete into the traffic. State Farm also knew that one of the boys had admitted throwing the concrete into the traffic. State Farm also knew that three of the four boys, all three except Mr. Abruzzo, had been either convicted or acquitted. State Farm pleaded no contest to felonies stemming from the incident, including mayhem, numerous counts of assault with a deadly weapon, and numerous counts of throwing objects at vehicles. Also, State Farm knew that Mr. Abruzzo's explanation of the event was that he was present, but he tried to talk the other boys out of it. That is the information State Farm received from its own insured. Mr. Abruzzo did not contend that there was an accident. He did not tell his mother that the boys were playing catch and something ricocheted off a wall and accidentally struck the vehicle. He did not say that. He told his mother that he was present and he tried to talk the boys out of it. Counsel, the Ramachala's complaint said that it included allegations that the boys had acted recklessly. Now, reckless acts are not intentional acts. Doesn't this raise the potential of coverage? No, Your Honor. The issue is what facts were alleged, not how the plaintiff characterizes the facts or characterizes the mental state of the defendants. The facts alleged were conspiracy to throw concrete and throwing of concrete into traffic. Moreover, the other facts acquired by State Farm conclusively established that there was nothing reckless about it. No facts provided to State Farm suggested that this was other than a deliberate act by one of the boys, one or more of the boys. Now, State Farm did not know, and I think today, to this day, we do not know, which of the four boys threw the piece that hit Mr. Reshamwala. But that does not matter for coverage purposes. The policy covers bodily injury resulting from an accident. It does not cover bodily injury resulting from a deliberate act, whether Mr. Excuse me, if one of the boys, assuming a couple acted intentionally, but one simply, you know, didn't want to do it, but sort of threw one over the, into the traffic, sort of recklessly, there would be a potential for coverage, would there not? If any facts suggested that the concrete entered the traffic by accident, there would be a potential for coverage. There were no such facts in this case. It's theoretically possible. One can imagine a scenario in which this happened by accident. That's how the district court reached the result it did. It depends a little bit on what you mean by accident. I'm making this up, obviously. I don't know that this was the fact. But it's possible that this boy lied to his mother. Boys are known to do that. And he didn't merely try to talk the other boys out of it, although he might have done that. Your Honor, under the California cases, that would not be an accident within the coverage of the policy. If the boy deliberately throws the concrete into the traffic, but harbors a secret hope that nothing will be hit and no one will be hurt, that would be an accident. How about if he deliberately throws it onto the freeway, aiming to what he sees as an empty spot, but he makes a mistake, the car's coming too fast, and he hits the car? That sounds as though he was trying to do one thing and did something else. The question for coverage purposes is, did the bodily injury result from an act that was deliberate or an act that was an accident? And in your hypothetical... Suppose you're driving by, I used to live in Chicago, suppose you're driving by Wrigley Field and Sammy Sosa hits a ball out of Wrigley Field and it crashes on your windshield and you're injured. Is that an accident? Does it depend on what kind of bat he's using? Well, it's probably an accident because I think when he swings the bat, he doesn't know that his ball is going to go into the parking lot. He hopes it will. He hopes it will, but in our case... He's heading for that wall every time. Exactly. In our case, we have one boy admitting, yes, we threw it into the traffic, we have convictions, we have no contest, please, we have Abruzzo's explanation. Now, theoretically, people can be lying. It's true. Mr. Abruzzo may have been lying, but... It might have been a lawyer's lie, that is to say he was telling the truth, but it just wasn't the whole truth because his mom hadn't asked all the right questions. Yes, I tried to talk him out of it, that's true, but then what happened after that? Well, he didn't say that. Your Honor, we have not just his conversation with his mother, we have a universe of facts, all of which point to the same conclusion. What I'm driving at is that as I understand California law, you look not only to the complaint as filed, but as to what the complaint might become as the suit goes forward, if you're looking at duty to defend. And if it is not beyond the realm, I'm not sure I'm getting the phrasing properly from California cases, but if it may turn out that this complaint or this case would evolve into something that's an accident, even though not originally couched as an accident, I think there's a duty to defend under California law. Your Honor, if the facts known could support the kind of amendment that you are discussing, there could be a duty to defend. But it must be a potential amendment based on the facts available. It cannot be a theoretical amendment based on other facts that may emerge in the future. The duty to defend turns on potential for coverage based on known facts, not potential or hypothetical facts. That's very important because that is the mistake the district court made. The district court posited a hypothetical scenario where four boys are throwing concrete and a piece bounces off a wall. That would be an accident. But that was not a potential amendment in this case based on the facts known, the universe of facts known to all the parties. Well, in fact, there weren't very many facts known at the time you denied coverage. And what was the original basis for your denial of coverage? It wasn't this, was it? That's correct, Your Honor. It was a different basis, but California law... What investigation do you need to do of what the factual basis might turn out to be before you can say we won't defend? Do you need to do any? The insurance company needs to investigate to uncover the facts sufficient to enable it to determine whether there's a potential for coverage. Do you need to talk to the boy, for example? He, after all, is the key actor. Your Honor, that might have been helpful. That was not necessary because the other boys gave uniform, consistent accounts. The complaint gave a consistent account. Plus, Mr. Abruzzo was not available, Your Honor. He departed the jurisdiction. Did your company try to talk to him? Your Honor, I don't know. The record, as far as I can tell, is silent on that question. That may well be. I'm not sure, Your Honor. But let me point out a few other things that were before the district court. Plaintiff's separate statement of undisputed facts supporting their motion for summary judgment. This is plaintiff's statement of undisputed facts. They said, After being in the construction site for a period of time and smoking cigarettes, some or all of the teenagers started throwing concrete into traffic. Excerpts of record, page 118. That's the plaintiff's statement. Here's the plaintiff's separate statement in opposition to State Farm's motion. One or more of the teenagers threw debris, including concrete, and one of the pieces struck Mr. Reshamwala. Gary and Joshua threw debris onto the freeway. One or more of the teenagers threw debris into the traffic lanes. Excerpts of record, 411 to 412. Also excerpts 416. In addition, the plaintiffs gave the district court an excerpt from one of the boys' depositions in which he testified, he and the other boys, threw pieces of concrete. Excerpts 420 and 422. Also before the district court was the declaration of Mr. Blocksberg that was submitted to the state court in the underlying tort action. Now, under the Urick case, which I filed this morning, what the plaintiffs tell the state court in the tort action should be considered in evaluating whether the company took the right position on duty to defend. That's what the Urick case says, and I would encourage the court to read that case. It's a situation very similar to ours in which the plaintiffs told the state court in the underlying action the insured acted intentionally, and they managed to get a very big judgment because it was a prove-up hearing. The insured didn't defend, just as in our case. They got a very big judgment. Now, Mr. Blocksberg told the state court in our case, Mr. Abruzzo threw concrete at passing cars. Excerpts of record, page 216. The plaintiffs also told the state court, the four boys entered into a criminal conspiracy to enter the construction site and throw concrete at passing cars. Excerpts 216. That is what they told the state court, and that is what enabled them to get a very large judgment against Mr. Abruzzo. Also before the district court in our case was a statement of facts that the plaintiffs submitted to the state court in the underlying action. Can I ask you this? Because I don't want to let the time run without this getting out on the table. Assume for the moment that we were to hold that you had a duty to defend and you breached that duty to defend. How are we to measure the appropriate recovery against your client? Very good, Your Honor. If you find there was a duty to defend and State Farm breached that duty, essentially affirming the district court's summary. On that point. On that point. The court would then need to turn to our second issue, because that would not dispose of the case. The second issue is judicial estoppel. And the reason it wouldn't dispose of the case is because the district court did not find it was a tortious breach of the duty to defend. The district court refused to find it was tortious. This was simply a breach of contract. That being the case, to establish that State Farm is liable for the underlying default judgment, the plaintiffs would have to show the judgment was covered, actually covered under the policy. Not potentially covered, which is the question we ask in analyzing duty to defend. But was it actually covered by the policy? Was it in fact an accident? Let's assume for the moment that there was no coverage. There was a duty to defend, but no coverage. Yes, Your Honor. Then how do we measure damages against your client? If there was a breach of duty to defend, but no actual coverage. No actual coverage. This Court would reverse the judgment, because the judgment holds State Farm liable for the entire underlying default judgment. If the Court finds that's not covered, this Court should reverse. I understand that. The damages would be whatever cost of defense Mr. Abruzzo may have incurred. Those would be the breach of contract damages. How about Hadley v. Baxendale damages? That is to say, reasonable and foreseeable consequences of the breach beyond cost of the defense, obviously because they didn't defend. Your Honor, the California courts have considered that point and have said that where the company merely breaches its contract by not defending, the measure of damages is the cost of defense. Those are the Hadley v. Baxendale damages. Those are the damages that the parties reasonably contemplate at the time they make the contract. That's the value of the company's promise. The value of the promise is the measure. And are those cases cited in your brief? I believe they are. If they are, don't point me to them. I believe Hogan is one of them. I believe Amato addresses this point as well. And I'd be happy to supply other authorities if the Court is interested. I believe they're in our briefs. Thank you. Let me briefly touch on judicial estoppel. As I mentioned a moment ago, the plaintiffs told the state court that this was all intentional. This was deliberate conduct by Mr. Abruzzo, that he went into the freeway with the intent to mess up some cars. He threw concrete into the traffic. At least 15 vehicles were struck, the plaintiffs told the state court. Now, that cannot be an accident. Fifteen vehicles were struck. Couldn't they have just been mistaken at the time? They may well have been mistaken. But the issue for judicial estoppel purposes is what did they tell the state court? What position did they take? What did they represent? And did it benefit them? Now, maybe they should have been more circumspect. Maybe they shouldn't have said that because they didn't really know whether 15 cars were hit or whether Mr. Abruzzo intended to mess up some cars. But the fact is that's what they told the court. Now, the European ---- Correct me if I'm wrong. My understanding of the law is that if they were mistaken, judicial estoppel would not apply. Your Honor, I respectfully disagree with that. Thank you. Educate me. Whether they are mistaken or whether they are correct, judicial estoppel applies because they led the state court to believe that Mr. Abruzzo did this deliberately, that 15 cars were hit. They led the state court to believe that. The state court responded by giving them a large judgment against Mr. Abruzzo, assigning 100 percent of the fault to Mr. Abruzzo based on that evidence. They then told the district court, in our case, it was an accident. Mr. Abruzzo did not throw anything. He was surprised by what happened. Now, whether they were mistaken, whether they should have investigated more fully before they made these representations in the state court, that doesn't matter. The fact is they led the state court to ---- Is that the action in which you should have defended them? If you ---- If we had a duty to defend. Yes. That was the underlying action. Yes, Your Honor. But we've cited in our case the Altman case, A-L-C-M-A-N, situation very similar to ours. The plaintiff tells the first court, defendant owes me $7 million, gets basically a default judgment by representing that. Plaintiff then gets an assignment from the defendant of the malpractice action against the defendant's attorney. Plaintiff sues the attorney in a second case. Plaintiff now says, defendant didn't really owe me $7 million. I just got the judgment because the attorney malpracticed. The court in the second case says, no, no, no. You told the first court they owed you $7 million. You got your judgment on that basis. You cannot now come into court with a different cause of action and say they didn't owe you $7 million. It was the attorney's fault. See, isn't the law in California, maybe I'm wrong on this, that we look to the situation at the time that you were, you were, you chose not to defend? And we don't look at the, in a duty to defend, you don't, the insurance company is not allowed to say I'm not going to defend and then hope that the case comes out. So there's evidence that shows that it was not an accident, it was not within the coverage. You're supposed to defend based upon the possible possibilities, the potentials. Isn't that right? That's the correct analysis for duty to defend. Now I'm talking about judicial estoppel and actual coverage. I know. I was wondering whether you can use judicial estoppel in this, in this kind of situation. Because doesn't that just encourage the insurance company not to defend and to wait and to see whether it turns out that, in fact, there was not coverage and that they admitted it and therefore, aha, gotcha. Your Honor, the Urick case which I filed this morning involves the same situation, the same situation. The company refused to defend, or actually in that case, they initially defended their insurer in a tort action. They withdrew the defense. Then the plaintiff and the insurer enter a settlement in which the insurer agrees a judgment may be entered in an amount to be decided at a prove-up hearing. The plaintiff goes to the prove-up hearing, as in our case, presents declarations, presents evidence about how bad the insured was. The plaintiff gets a big judgment, gets an assignment from the insured, just as in our case, then goes after the insurance company in a new action. We'll read that case. You have Easter time. We'll give you one minute on rebuttal if you need it. Thank you very much. Thank you. May it please the Court. My name is Frank Bloxberg. I represent Mr. and Mrs. Reshamwallah. It seems to me that the real basis for State Farm's argument, counsel certainly said it enough times, was that State Farm knew all sorts of really damaging facts when it denied coverage. That's just plain not true. That's a lie. At the end of Mr. and Mrs. Reshamwallah's brief, there are two tables. Those tables describe when State Farm learned what it learned. And virtually every single piece of information. Every single piece of information. Counsel, would you speak directly into the microphone, please? I'm sorry, Your Honor. I'm nervous and kind of wiggly. You can just pull it down a little bit and shorten. Virtually every single piece of information the counsel just quoted, State Farm did not know when it denied. The only thing it did know was what Ms. Nucci said about her son. And this is what Ms. Nucci said. This is all of it. This is everything that State Farm knew in answer to a question. Here's the question. Okay. And my understanding is that there were two, there were never any charges. Darrell's mother says, correct. He was, you know, he hadn't seen these people in a while and went along with them. And I mean, you know, but he said he went along with them and was trying to talk them out of it. You know, that's the story that I heard from him. There were charges, but he was with them about the time. But I don't know, you know, that he was with them when this event went down. With all due respect, that means nothing. Ms. Nucci is not being particularly forthcoming. She's being confusing. Don't know what Darrell Abruzzo's story is from that. And that's all State Farm knew. State Farm didn't bother to obtain a statement from Nucci. Didn't, excuse me, from Abruzzo, from his dad, from the kids. Didn't get a copy of the CHP report. Did no investigation, Your Honor. Judge Fletcher, you asked, what about an investigation? That's right. What about an investigation? State Farm took Ms. Nucci's statement. It was an eight-minute investigation dedicated solely to proving that Darrell Abruzzo, her son, was not a resident of his mother's home. That was it. There was no discussion of intentional act or any of those things. And that's why we argue that State Farm forfeited any opportunity to argue these positions. It didn't know anything. What about your argument in the State Court that these acts were intentional? You know, I haven't had an opportunity to read the entire case. I haven't had an opportunity to read the cover letter. But there's one spot in here that I noticed. Apparently, the plaintiff – excuse me, the insurance company knew all of the evidence that the plaintiffs provided in declarations for the judgment prior to denying coverage. And this is what the Court says very quickly here. What page are you on? I am on page 18. I'm sorry, Your Honor. Okay. That's all right. Thank you. Right. Second and third line. Further, they are not impermissible post-denial evidence, as UREC asserts. Well, you know, that goes back to one of your questions. Is this a gotcha situation? What we'll do is we'll deny knowing nothing, no investigation. We'll breach our duty to investigate and then hope that it works out later. Now, as far as Gallabruz is concerned, because you know they defended and indemnified his mother, but State Farm didn't know any of this information when it denied. It wants to wait four years approximately. My table in the end of the brief says how long it is, some 1,900 days or 1,500 days or something. It wants to wait years and years to find out what the rationale is determined in the litigation. Now, if you look at the facts that the Reshomolahs submitted to the Court, there was some deposition testimony to the original trial court, that case in which State Farm should have defended. There was some deposition testimony that said that Daryl Abruzza was there and that he did throw some concrete. That's what we submitted. Now, the Reshomolahs are under an obligation to show a prima facie case to obtain a judgment, and that's what they did. Nothing more. A prima facie case. And also UREC, it appears to say that even if there is evidence of an intentional act and all that good stuff, there's still what about the causes of action that are not intentional? UREC talks about defamation could be an unintentional act, or some others. I'm not clear on the case. I'm sorry. But here there's negligence. What if Abruzzo picked up a piece of concrete and threw it inside the construction site and it accidentally went into traffic? There's absolutely nothing that we know to this day that says that that couldn't have happened. It's got to be unequivocal evidence at the time they deny. Now, the default judgment is, of course, a very large judgment. Yes, sir. But the injuries were also pretty severe. Extremely. And as I understand that default judgment, it's not premised upon an intentional act. It's premised solely upon injury. That is to say, it's fully sufficient analytically to support that judgment that this had been negligent behavior. Is that correct? Yes. I think that there was some talk where we submitted in our papers about a conspiracy. There's also a concert of action claim where Abruzzo was just in the stream of what was going on and just was doing what he shouldn't have been doing. There is nothing in the judgment itself to indicate that there's an intentional act. And there's no punitive damages. Now, these are purely compensatory damages. Purely. Okay. What if we find that there was a duty to defend? Don't we then have to remand for a trial on whether there was actual coverage? No, absolutely not. Why not? Counsel argued that if there's no bad faith, and by the way, remember, you can uphold for any reason that's appropriate in the record, and I believe that State Farm breached its duty to investigate. And as a result, it did commit bad faith. In the first motion for summary judgment that the Russian model submitted, they didn't have that evidence at the time and didn't attempt to prove up a bad faith breach of the duty to investigate. Anyway, counsel argued that if there is no bad faith duty, ignoring the breach of the duty to settle for right now, and assuming that there's no coverage, then tough, there's no damages. There's no recovery for the wrong of breaching the duty to defend. But Amato says exactly the opposite. Amato says, originally said, Amato 1 said, well, it's the amount of attorney's fees in defense. But then Amato 2 came along and the Court said, well, we didn't understand the record was so limited, we didn't understand this went by default, and there were no attorneys' fees. One of those circumstances is the judgment. Now, the Court did say in that circumstance that there was a bad faith breach of the duty to defend. And here the court hasn't the trial court hasn't gone that far yet. But nonetheless. That wasn't even discussed. No. As far as I know. And Amato doesn't stand for the proposition that you have to have a bad faith denial. It just says there was one. But nonetheless, let's assume that we don't have one here and that there's no coverage. Then what's the breach for this egregious act? I mean, excuse me, what are the damages for this egregious act? According to counsel, nothing. It's just a freebie. Well, we know that for every harm there is a remedy. Certainly a big harm such as this, that the boy is looking at a multimillion-dollar judgment against him because State Farm abandoned him. What's the remedy? The only remedy can be the judgment. Now, let's assume. Now, this is a follow-on to Judge Nelson's question. And I read as many of the California cases as I could, but I'm not sure I'm to the bottom of this question yet. The California cases appear to say that when there is a breach of the duty to defend and there is then a judgment recovered against the insured, the insurance company is liable for that judgment provided there is coverage. That last provided there is coverage is what I'm questioning. Are you saying there does not need to be a showing of actual coverage in order for the insurance company to be liable for that judgment? In most cases, there is that requirement. However, all the cases that you're referring to, I do believe. And all the cases that State Farm refers to are cases in which the insurance company defended. Well, if the insurance company defends and then there's a ---- Settlement cases? Yes, a settlement in excess of policy limits. Well, there's no breach. Well, the insurance company is entitled to rely upon its policy limit and doesn't have to go beyond the policy limit where there's no breach. Do you have any case to support your position? I think Amado supports it. I think Tradewind and Dicta says it absolutely clearly that in these cases, there is no showing of indemnity required. In fact, it says it cited in my brief. I think that in PPG Industries, Justice Mosk in his dissent, when he's just laying out the law before he gets to why he disagrees with the Court's ruling, in that case, by the way, the Court said that an insurance company doesn't have to offer settlement for punitive damages. And Justice Mosk disagreed. And as he went along, Justice Mosk said that the duty to settle arises out of the duty to defend. And he cited Communal for that. And I think that any fair reading of Communal means just precisely what Justice Mosk says it means, that when there's a duty to defend, there's a duty to settle, that the duty to settle arises out of the covenant of good faith and fair dealing. And if the insurance company has to protect the defendant, the insured, and has to give that insurer's interest equal consideration with its own, it is not allowed to consider whether coverage is a basis for this run. Oh. Whether the insurance company is not allowed to consider whether coverage exists in denying or rejecting a settlement offer, then that covenant arises with the duty to defend. It makes no sense that it just be the duty to indemnify and never else. The rest is the damage. Doesn't it make some difference with respect to damages? I'm sorry, Your Honor. Doesn't it make some difference with respect to damages? I don't understand your question. If there was no – if it turns out that there was no coverage for the duty to defend, it doesn't seem to make a lot of sense to say that they're nevertheless liable for the entire amount. Certainly. Maybe liable for fees and stuff and things like that. If the insurance company has defended and ultimately – and denies – excuse me, rejects a settlement offer in excess of policy limits, and ultimately there's no coverage, then there's no harm. There's no breach. There's no damage. Right. Whereas here, there's extreme damage. And State Farm says, well, tough. Doesn't matter. Then I'd like to hear your answer again. Maybe I just didn't understand it. The California Supreme Court, as I read the cases here, said, insurer must bear the cost of a wrongful refusal to settle if coverage is later found, implying to me that if coverage is not later found, then there would be no damages except for the breach of the duty to defend. Now, please tell me how I should interpret that. The Supreme Court was talking about a case in which the insurance company had defended. So its thinking was strictly in that paradigm. Again, the Supreme Court is simply not addressing the question where an insurance company breaches its duty to defend. There's a judgment in excess of policy limits, and the insurance company had the opportunity to protect the insured within policy limits. Do you have a case that's actually then on all fours with this case, as you're parsing the cases, that is to say a case where the insurance company from the beginning says, we are not going to defend, where there is a later judicial holding that they breach the duty to defend, and there was a fairly large judgment in the underlying lawsuit. Do you have such a case? I don't think that case exists. That must happen from time to time. It's odd that there's no such case. Particularly in California, there's no case. You know what I think? This might be stepping outside the bounds, but what I think is that no insurance company has been dumb enough to make that argument, that we can refuse or, excuse me, that we can defend, but then refuse to offer any settlement within policy limits. So that hasn't come up. And I think what's happened is that the trial courts have said, well, this is a bad faith breach of the duty to defend. And I think, Your Honors, when you look at the record and you look at the duty to investigate, you will find that there's a bad faith breach of the duty to defend. And so we don't even need to go there. Although to find that, we can't do it on this record. That is to say, that's a question that the district judge has not yet reached. Yes, you can find it on the record because it is in the motions. And the district judge simply did not rule on that issue, and you cannot hold for any basis whatsoever that's in the record. That is expressly the first argument in the Bresham Law's motion for summary judgment. Right. I see. So it's not that we can't reach it. It's that the district judge has not yet reached it. We may decide that perhaps we would not like the district judge to reach it in the first instance. But you say we can because it's part of the summary judgment motion that was denied and it's been appealed. Right. I understand. Right. And further, State Farm is, in its brief, as another one of my tables says, is using facts that it didn't submit in its motion for summary judgment. State Farm is relying wholly upon facts it didn't know at the time. This is State Farm's bottom line. We did no investigation. They didn't do any. Counsel isn't saying that they did any before it denied on August 23rd. And by the way, State Farm argues that the Bresham Laws did not discuss the August 23rd date in the underlying case. That's false. That's wholly false. The Bresham Laws, in their motion for summary judgment, and if you give me a moment here, I will find it. At the E.R., at pages 576 through 577, at 594 and at 595, the Bresham Laws talk about the date the State Farm denied coverage, August 23rd, 1994. State Farm, in its opposition to the Bresham Laws motion, which State Farm left out of its excerpts of record, admits that the date was August 23rd, 1994. And that is at the supplemental E.R. at page 96 and 97. I think what's really important also, Your Honor, is if you were to consider remanding, to be sure, not to remand simply on the question of judicial estoppel or some other thing, this case was resolved on summary judgment. There have only been certain issues which have been resolved in favor of the Bresham Laws. And all the other issues would still be open, such as the duty to investigate being breached. Well, I guess I'm still ‑‑ Sure. I haven't parsed the record sufficiently, I guess. But I'm a little unclear as to what the record demonstrates with respect to what was at issue before the district court. You say that you argue ‑‑ you briefed the issue of the measure of damages. And did State Farm contest that and argue that the ‑‑ that if there was no coverage, that there would be no damages? State Farm argued that ‑‑ I can't answer your question, Your Honor. I'm not sure I understand. I mean, I'm just trying to figure out whether the district court really did decide. The district court decided that in response, there were three motions for summary judgment brought by the Bresham Laws, one brought by State Farm. The Bresham Laws first motion for summary judgment was that there was a duty to defend because Daryl Abruzzo was a resident. Remember, that was the only basis that State Farm did any investigation whatsoever and denied. And State Farm brought its own motion, intentional act, insurance code section 533, all sorts of things, all of which the district court rejected. That was denied. Later, the Bresham Laws brought two more motions. One motion was addressed solely to State Farm's defenses. That motion was granted. State Farm is not appealing that. The other motion was motion for partial summary judgment on the issues of whether there was a breach of the duty to investigate, whether there was a breach of the duty to settle. And I'm not sure. I don't remember the rest of it. And what was the ruling on those? Oh, and also forfeiture of its other defenses for failure to investigate. And the ruling was granted on the issue of failure to settle because State Farm's sole basis for settling was the impermissible. Okay. And so that is unquestionably a breach of the good faith and of the duty of good faith in fair dealing. And State Farm's position is simply, well, that's just too bad. That's just too bad. We get to, you know what? Well, you've got about 20 seconds left. I don't know if I can do it in that fast. State Farm placed a bet, and that is it placed a bet that there would be no duty to defend. And now it simply wants to change its bet, and it can't do it. This is determined at the time that State Farm denied coverage. What did State Farm know then? And it knew nothing. Thank you, Your Honors. Thank you. Tell him very briefly. Thank you, Your Honor. The Court should distinguish the duty to defend from the duty to settle. And they've been a little confused in opposing counsel's argument. An insurance company has no duty to settle an uncovered claim. No duty to settle an uncovered claim. So to demonstrate that the carrier breached its duty to settle, the insured must demonstrate the claim was covered. Not potentially covered, but actually covered based on the real facts that emerged at any time. At any time, was it actually covered? Now, the plaintiffs cannot show it was actually covered in this case, because ---- So what happens? So if you breached your duty to defend ---- Then the damages would be defense costs. I mentioned Hogan in my opening. It was not in our brief, but I have the cite for you. It's 3 Cal 3rd 553, 91 Cal Reporter 153, 476 Pacific 2nd 825. What's the name of that case? It's Hogan, H-O-G-A-N, California Supreme Court. And it says when the carrier breaches its duty to defend as a breach of contract, not a tort, which is what we have here, a breach of contract, the damages are the defense costs, what attorneys' fees the insured incurred because the carrier didn't defend him. Now, to collect the judgment, plaintiffs would have to show the company should have settled that case. A company has no duty to settle a claim not actually covered. In other words, if this was not an accident, based on everything we now know, if it was not an accident, the company was correct in not settling it because they had no duty to cover it. Did the district court rule on that issue? The district court, yes. The district court ruled first we did not breach our duty to defend tortiously. So that tells you a motto is distinguishable. A motto says when there's a tortious breach of duty to defend, the judgment flows from that. Here, the district court, it's not just that he didn't reach the issue. He reached it. And he said, I am not finding bad faith. I am not finding a tort. I'm finding mere breach of duty to defend. Okay. And he awarded. Well, then he found further breach of the duty to settle. Yeah. Okay. And that is why he awarded the entire judgment. Thank you.  You have Easter time. Thank you.
judges: Schroeder, Dw Nelson, W. Fletcher